Downey, Judge,
delivered the opinion of the court.
The questions for consideration are presented by demurrer to the amended petition. The grounds of demurrer are stated in four paragraphs, but they amount practically to a general demurrer on the ground that the petition does not state a cause of action against the United States. There are concessions of such a nature that the questions presented are narrowly confined.
The petition seems to very fully present the case, there is no intimation that the facts are not substantially as stated, and, aside from a determination of the amount of recovery in the event, the demurrer should be overruled, the conclusion thereon is determinative of the action.
It is not regarded as necessary to quote at length the aver-ments of the petition. They sliow, briefly stated, that the *916 plaintiff owned, by assignment, certain patents; one “ for amplifying feeble electrical currents ” and one “ for space telegraphy,” and that on March 16, 1917, it executed and delivered to the Western Electric Company an instrument, a copy of which is attached to the petition, granting to said Electric Company, in broad terms, an exclusive license to-“make, use, install, operate, and lease, and to sell or otherwise dispose of to others,” apparatus and systems embodying the inventions here in question, and granting to said Electric Company all transferable rights of any kind or nature, except the rights expressly reserved, which, so far as here material, was the nonexclusive, nontransferable personal right to make for and sell to the United States the patented inventions in question, which, so far as this case is concerned, were devices called “ audions ” or “ test tubes ” for use in radio communication. All the rights which the Western Electric Company acquired by virtue of said instrument were by it conveyed to the American Telephone & Telegraph Company.
When the war came on the United States was urgently in need of large quantities of these audions and informed the American Telephone & Telegraph Company of its desire to have a large number thereof manufactured by the General Electric Company and the Moorhead Laboratories, Inc., whereupon said Telephone Company advised the United States by letter to the Chief Signal Officer of the Army that it would not interfere with the immediate manufacture of said audions for the United States by said General Electric 'Company and other manufacturers provided it were understood and agreed that it waived none of its claims under any patents or patent rights owned by it and that all claims under patent rights and all patent questions be reserved and later investigated, adjusted, and settled by the United States, which plan was accepted by the United States and orders for said audions were by the United States placed with said General Electric Company and said Moorhead Laboratories, Inc., and said audions were by said companies manufactured and delivered to the United States.
It is not questioned that the American Telephone & Telegraph Company was fully authorized to grant a license to *917 manufacture and use the audions and that if it did in fact license the United States to have said audions manufactured the plaintiff has no case. The primary question therefore is whether, under the averments of the petition there was a licensing.
In standard textbooks, Walker on Patents,- and others, from which we deem it unnecessary to quote in detail, established principles as to licenses, uncontroverted as we understand it, are to be found. Among them, no particular form of license is necessary; a license may be written or it may be oral; it may be express or it may be implied; it may be implied from the conduct of the parties, etc.
It was in writing in this case, as it is averred, not in the form of a contract signed by both parties, but in the form of a letter the terms of which were accepted. It does not appear from the averments that there was any attempt to use express words of license, but, responding to a statement that the United States desired, in the emergency of war, to have the audions manufactured in large quantities, the information from the party having the right to grant a license was that it would not do anything to interfere. The conditions following do not weigh in determining the question, since they were accepted by the United States.
The reason for the use of the particular language indicating no disposition to interfere may be found in the fact, a matter of common knowledge, that in a number of instances when the United States was contracting for the manufacture of patented articles, the manufacturers with whom the United States was contracting were enjoined by patentees or owners of patents.
Therefore, being informed by the United States of the desire to procure the manufacture of the audions by the companies named, the licensor (we think the term may properly be used) said, in effect, “ Go ahead, we will not interfere.” The purpose and the understanding of both parties seem clear and permit of but one construction, the granting to the United States of a license or a permission to proceed with the manufacture of the patented articles.
This conclusion seems thoroughly justified from what has been said, but if there could remain doubt, it is removed by *918 the further conduct of the parties. The fourteenth paragraph of the petition avers assistance rendered by the American Telephone & Telegraph Company to the United States and to representatives of the General Electric Company by way of furnishing information, drawings, and blue prints and exhibiting methods of manufacture, “ all to the end that the said audions might be the more promptly manufactured and delivered to the United States for use in the war in which it was then engaged.” Assistance so rendered in the use of a patented invention not only, as a legal proposition, renders the use a lawful one as distinguished from an infringement, but considered simply as an aid to construction in determining whether or not there was a license, it closes the door to any other than an affirmative conclusion.
It may be added that the only justifiable inference from the averments of the petition is that the American Telephone & Telegraph Company has never questioned the granting of a license by it, for it is averred that subsequent to the manufacture of the audions in question there were negotiations between the United States and that company resulting in the execution of a release to the United States, waiving and releasing all claims against the United States and the manufacturers acting under its order. Whether gratuitous or for a compensation paid does not appear and is immaterial.
The case would seem so thus determined as to preclude any basis of contention on the part of the plaintiff, but, asserting that the United States was not a licensee and that the settlement referred to was subsequent to the commencement of this action, it contends that it may sue and recover as for infringement under Paragraph VII of the instrument executed by the plaintiff and the Western Electric Company wherein it is provided that either party may institute and conduct suits against others for infringement “within the fields in which it possesses rights,” etc. *
Plaintiff’s asserted rights under this paragraph would require consideration of some questions argued in its brief if it were not for the conclusion already reached on the question of a license, but conclusion that the American Telephone & Telegraph Company, under the averments of the *919 petition, had granted a license to the United States precludes the assertion of a cause of action under said Paragraph VII as for an infringement.
The demurrer is sustained.
'GRAham, Judge; Hay, Judge; Booth, Judge; and Campbell, Chief Justice, concur.